# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
|  | : |
| Applicant, | : |
|  | : |
| v. | : |
|  | : |
| MICHAEL J. DANIELS and DOUGLAS P. ZOLLA, JR., | : |
|  | : |
| Respondents. | : |

## SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER ENFORCING ADMINISTRATIVE SUBPOENAS

Applicant Securities and Exchange Commission (the "Commission") applies to the Court for an order compelling Respondents Michael J. Daniels ("Daniels") and Douglas P. Zolla, Jr. ("Zolla" and, together with Daniels, "Respondents") to comply with the Commission's lawfully issued subpoenas to produce documents and/or appear for testimony in connection with an ongoing investigation. In support of this application, the Commission states as follows:

## INTRODUCTION

1.      The Commission is forced to file this application because Daniels and Zolla refuse to comply with subpoenas the Commission staff issued to them on February 8, 2017 and February 23, 2017, respectively (the "Daniels Subpoena" and the "Zolla Subpoena" and, together, the "Subpoenas"). The Commission staff issued the Subpoenas in support of an ongoing investigation into potential violations of the federal securities laws. In support of this application, the Commission submits the attached Declaration of Jeffrey T. Cook, Senior Counsel

1

at the Commission (Exhibit 1).

2.      Daniels and Zolla's responses to the Subpoenas are critical to the Commission's ongoing investigation into the manufacture of a series of at least five undisclosed blank check companies, which Daniels apparently controlled and for which Zolla was a named officer and/or shareholder. Daniels' testimony is particularly important because he purports to have no documents with respect to several of these companies, and otherwise produced very few documents because he purportedly does not keep any emails longer than a few days.

3.      Attempts to enforce the Subpoenas have been futile. For example, on February 9, 2017 (the day of service of the Subpoena), Daniels left the following voicemail for the Commission staff:

> Yes my name is Michael Daniels and I received a subpoena to testify in the matter of Orion Global Corp. And I will not be responsive to this subpoena. I will not appear for testimony and I will not respond to the questionnaire. If you want me to testify, you need to set up a hearing with a federal judge in Tampa for a motion to compel and I will appear there and I will be responsive to that motion. Otherwise I will not be communicating any longer. Thank you.

4.      The Commission has the right to demand production of evidence in a lawful investigation conducted pursuant to its enforcement powers. Accordingly, the Commission seeks an order enforcing the Subpoenas and directing Daniels and Zolla to fully comply.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter under Section 22(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v(b), and Section 21(c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(c). The Southern District of Florida is a proper venue for this application under Section 21(c) of the Exchange Act because the investigation is being carried on in and requires the production of responsive information in the Southern District

of Florida.

## RESPONDENTS AND RELATED ENTITIES

6.      Daniels is a resident of Palmetto, Florida.  As identified in Commission filings, Daniels was the President, Chief Executive Officer, Chief Financial Officer, Treasurer and Chairman of the Board of Court Document Services, Inc. n/k/a ChinAmerica Entertainment Movie Co. ("Court Document Services"), the Principal Executive Officer, Secretary, Treasurer, Chairman of the Board, Principal Accounting Officer, and Chief Financial Officer of Quality Wallbeds, Inc. n/k/a Sichuan Leaders Petrochemical Co. ("Quality Wallbeds"), the Secretary, Chief Financial Officer, Treasurer, Director, and Chairman of the Board of Top to Bottom Pressure Washing, Inc. n/k/a Ibex Advanced Mortgage Technology Co. ("Top to Bottom"), and a shareholder of PurpleReal.com Corp. ("PurpleReal.com").  (Exh. 1 ¶ 6).

7.      Zolla is a resident of Sarasota, Florida.  As identified in Commission filings, Zolla was a shareholder of Dinello Restaurant Ventures, Inc. n/k/a AF Ocean Investment Management Co. ("Dinello"), Court Document Services, Quality Wallbeds, Top to Bottom, and PurpleReal.com (all five companies are referred to collectively as the "Issuers").  Zolla was also the President of Top to Bottom. (*Id.*).

8.      Each of the Issuers had a class of its common stock registered with the Commission pursuant to Section 12(g) of the Exchange Act and reporting requirements with the Commission pursuant to Sections 13(a) and/or 15(d) of the Exchange Act.

## THE INVESTIGATION

9.      On August 6, 2014, the Commission issued a formal Order Directing Private Investigation and Examination and Designating Officers to Take Testimony in *In the Matter of Orion Global Corp.* (FL-3904) (the "Formal Order").  (Exh. 1 ¶ 2, Attachment A).  The

3

Commission staff is investigating possible violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by three specifically named entities, including PurpleReal.com, and their "affiliates and/or other individuals or entities related thereto." (Exh. 1 ¶ 3). The investigation is being conducted out of the Miami Regional Office of the Commission located in Miami, Florida. (*Id.*).

10.     As a result of this investigation, on May 12, 2015, the Commission entered a settled stop order suspending the effectiveness of a Form S-1 registration statement filed by PurpleReal.com based on untrue statements of material facts and omissions concerning, among other things, PurpleReal.com's business operations and purpose, the identity of an undisclosed control person, and the knowledge and involvement of named shareholders to whom the undisclosed control person had gifted the shares. In the Matter of the Registration Statement of PurpleReal.com Corp., Securities Act Release No. 9770 (May 12, 2015). (Exh. 1 ¶ 4, Attachment B). The undisclosed control person described in the stop order was Daniels. (Exh. 1 ¶ 4).

11.     Under the Commission's Formal Order in this case, members of the Commission's staff are officers of the Commission empowered to administer oaths, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry. (Exh. 1 Attachment A).

12.     The Formal Order directs the Commission's staff to conduct a private investigation to determine whether, among others, PurpleReal.com and its "affiliates and/or other individuals or entities related thereto" have engaged in, or are about to engage in, the enumerated potential violations of the federal securities laws. (*Id.*). Two such individuals are

Daniels and Zolla, given their status as at least shareholders of PurpleReal.com and officers and shareholders of the other Issuers related to PurpleReal.com. (Exh. 1 ¶¶ 5-6).

## BACKGROUND

### Daniels

13.     Pursuant to the Formal Order, on February 8, 2017, the Commission's staff issued the Daniels Subpoena, which required Daniels to appear for testimony on April 5, 2017. (Exh. 1 ¶ 7). The Daniels Subpoena was properly issued and validly served by UPS Overnight Delivery on Daniels at his primary residence. (Exh. 1 ¶¶ 7-8, Attachment C-D).

14.     On February 9, 2017, Daniels left the following voicemail message for the Commission staff:

> Yes my name is Michael Daniels and I received a subpoena to testify in the matter of Orion Global Corp. And I will not be responsive to this subpoena. I will not appear for testimony and I will not respond to the questionnaire. If you want me to testify, you need to set up a hearing with a federal judge in Tampa for a motion to compel and I will appear there and I will be responsive to that motion. Otherwise I will not be communicating any longer. Thank you.

(Exh. 1 ¶ 9).

15.     On February 15, 2017, the Commission staff sent Daniels a letter (the "February 15, 2017 Letter") to confirm that Daniels had personally left the voicemail. (Exh. 1 ¶ 10, Attachment E). The February 15, 2017 Letter also notified Daniels that the Commission staff expected Daniels to appear for testimony pursuant to the Daniels Subpoena on April 5, 2017, and, if he did not, the Commission staff would file a subpoena enforcement action against him. (*Id.*)

16.     Daniels failed to appear for testimony on April 5, 2017, at the time and place noted on the Daniels Subpoena. (Exh. 1 ¶ 11). Specifically, on April 5, 2017, a court reporter

entered Daniels' non-appearance on the record.  (Exh. 1 ¶ 11, Attachment F).

**Zolla**

17.     Pursuant to the Formal Order, on November 3, 2016 and November 15, 2016, the Commission staff issued subpoenas to Zolla via UPS overnight delivery to the same address where Zolla was later personally served with the Zolla Subpoena.  (Exh. 1 ¶ 12, Attachment G-H).   Those subpoenas called for Zolla to produce documents and appear for testimony in December 2016.  (*Id*.).

18.     Zolla did not respond to either of those subpoenas, even after the Commission staff left multiple messages for Zolla by phone (at two different numbers) and email (at three different addresses) with respect to those subpoenas.  Moreover, the Commission staff received no response from Zolla to any of the emails or voicemails.  (Exh. 1 ¶ 13).

19.     As a result, pursuant to the Formal Order, on February 23, 2017, the Commission staff issued the Zolla Subpoena to be served by a process server.  (Exh. 1 ¶ 14, Attachment I). The Zolla Subpoena required Zolla to produce documents on or before March 9, 2017, and to appear for testimony on March 29, 2017.  (*Id*.).  The Zolla Subpoena was properly issued and validly served by a process server on Zolla personally.  (Exh.  1  ¶ 16, Attachment J).

20.     To date, Zolla has failed to produce documents or appear for testimony pursuant to the Zolla Subpoena. (Exh. 1 ¶¶ 17-18).  Specifically, on March 29, 2017, a court reporter entered a non-appearance for Zolla on the record.  (Exh. 1 ¶ 18, Attachment K).

21.     The documents and testimony sought by the Subpoenas are necessary to the Commission's investigation of potential securities violations and are expected to provide additional relevant information that is currently unavailable from any other known source. For example, the investigation to date indicates that: (1) PurpleReal.com (which is expressly named

in the Formal Order) was the latest in a series of companies, including the other four Issuers, for which Daniels registered an offering of its securities through a Form S-1 registration statement filed with the Commission for purposes of selling the Issuer as a public vehicle; (2) Daniels used friends and family, including Zolla, as both nominee officers and shareholders to make the Issuers appear to be separately managed companies with independent shareholder bases; and (3) Daniels effectuated the sale of the Issuers' securities in both private transactions and the open market. (Exh. 1 ¶¶ 4-6, 19).

22.     The Commission staff intends to take the testimony of both Daniels and Zolla with respect to their knowledge of and involvement in the Issuers.  Much of this information is uniquely in Daniels and Zolla's possession.  Moreover, the Zolla Subpoena requests documents concerning three of the Issuers and a brokerage account in Zolla's name in which shares of one of the Issuers were sold in the open market. (Exh. 1 ¶ 15, Attachment I).

## MEMORANDUM OF LAW

## I.     The Court Has Jurisdiction and Venue Properly Lies in This District

Congress gave the Commission broad authority to conduct investigations and require production of evidence and testimony relevant to those investigations. *See, e.g.*, Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. §§ 78u(a) and (b) ("For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence . . . ."); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission."); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1380

7

(D.C. Cir. 1980) (given the Commission's broad statutory mandate to investigate, there was "virtually no possibility" the Commission exceeded its authority in issuing an investigative subpoena).

Furthermore, when parties refuse to comply with lawful Commission demands for documents or testimony issued pursuant to the Commission's broad statutory authority to investigate, Congress has authorized the Commission to seek, and the federal courts to issue, orders compelling production or testimony. "In case of . . . refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States within which the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records." Section 21(c) of the Exchange Act, 15 U.S.C. § 78u(c).

That very language also provides that venue lies in the Southern District of Florida, as it provides the Commission may seek a court order "within which the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business." 15 U.S.C. § 78u(c). Here, venue is proper in this district because the investigation is being carried on in and requires the production of responsive information in the Southern District of Florida. (*See* Exh. 1 ¶ 3).

## II.     The Court Should Conduct A Summary Proceeding

Subpoena enforcement actions are generally summary in nature and the Court may therefore hear them in summary fashion without strict adherence to the Federal Rules of Civil Procedure. *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 229 (8th Cir. 1984) (under Rule 81(a)(3) of the Federal Rules of Civil Procedure "the district court has discretion to deny hearings or limit the applicability of discovery in a proceeding to compel the production of

8

documents in accordance with a subpoena issued by an officer or agency of the United States");
*SEC v. Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (upholding right of district court to enforce subpoenas in summary proceedings without the filing of a complaint pursuant to Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), which allows a district court to enforce a subpoena "upon application of the Commission").

Accordingly, the Commission asks the Court to promptly hear and rule on the Commission's application so that Respondents' failure to properly and fully respond to the Subpoenas is not allowed to continue. *SEC v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971).

## III.     The Commission's Subpoenas Satisfy All Requirements for Enforcement

A district court's role in a proceeding to enforce an administrative subpoena "is limited." *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). Under that limited review, a court should enforce an administrative subpoena if it is reasonably relevant to an authorized investigation. *EEOC v. Technocrest Sys.*, 448 F.3d 1035, 1040 (8th Cir. 2006). *See also United States v. Morton Salt*, 338 U.S. 632, 652 (1950) (courts should only inquire into whether an administrative subpoena "is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant"); *Tire Kingdom*, 80 F.3d at 450 (same).

Courts have generally looked at four criteria to determine whether to enforce a Commission subpoena: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enterprises, Inc. v. SEC*, 122 F.3d 93, 96-97 (2d Cir. 1997); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975); *SEC v. Brigadoon Scotch*

*Distributing Co.*, 480 F.2d 1047, 1053 (2d Cir. 1973). Once the Commission satisfies these criteria, the burden shifts to a respondent to demonstrate the subpoena is unreasonable. *Brigadoon Scotch Distributing Co.*, 480 F.2d at 1056. However, the burden of showing unreasonableness "is not easily met" as long as the Commission's inquiry is legally authorized and the information it seeks is relevant to the inquiry. *Id.*

           1.    *The Commission's Purpose Is Lawful*

As discussed above, Congress has given the Commission broad authority to investigate whether the federal securities laws, rules, and regulations "have been or are about to be violated." Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a); Sections 21(a) and (b) of the Exchange Act, 15 U.S.C. § 78u(a) and (b). Pursuant to that authority, the Commission issued the Formal Order authorizing designated officers to conduct an investigation into possible violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder by PurpleReal.com and related persons and entities. (Exh. 1 Attachment A). Daniels, Zolla, and the other Issuers are all related to PurpleReal.com. (Exh. 1 ¶¶ 4-6, 19).

Pursuant to the authority conferred under the Formal Order, the Commission's staff issued the Daniels Subpoena to Daniels to provide testimony, and the Zolla Subpoena to Zolla seeking documents and to provide testimony. The Subpoenas are within the parameters of the Commission's broad discretion to investigate: "For the purpose of any such investigation, or any other proceeding under this title, any member of the Commission or any officer designated by it is empowered to . . . require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b); *see also O'Brien*, 467 U.S. at 745 ("It appears, in short, that Congress intended to vest the SEC with considerable discretion in determining when and how to investigate

possible violations of the statutes administered by the Commission").

Accordingly, the Commission's purpose in issuing the Subpoenas to Daniels and Zolla to produce documents and/or provide testimony was lawful.

2.   *The Commission Seeks Relevant Information*

The measure of relevance used in subpoena enforcement actions is "quite broad." *United States v. Florida Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994). A district court may enforce a subpoena so long as "the materials sought are not clearly irrelevant or immaterial." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978) (upholding district court's use of that language as standard for relevance).

The Daniels Subpoena for testimony and the Zolla Subpoena for documents and testimony meet that broad standard.   As discussed above, the Commission staff is investigating, among other things, whether PurpleReal.com and related persons or entities, including Daniels, Zolla and the other four Issuers[1], violated certain provisions of the federal securities laws.  The documents and testimony sought are relevant to that investigation.

For example, the Zolla Subpoena requests the production of documents related to three of the Issuers (Dinello, Court Document Services, and Quality Wallbeds), which appear to be involved in the potential violations of the federal securities laws identified in the Formal Order. Documents concerning these Issuers, for which Zolla was a named shareholder, would be highly relevant to the Commission's ongoing investigation.

The other requests for documents in the Zolla Subpoena are similarly directed at uncovering these possible securities violations. For instance, the staff is aware that a brokerage

---

[1] The four other Issuers are related to PurpleReal.com because they all appear to be part of Daniels' pattern to package companies for sale as public vehicles, including the filing of Form S-1 registration statements and other documents with the Commission involving nominee officers and shareholders (including Zolla). (Exh. 1 ¶¶ 4-6, 19).

11

account at Raymond James & Co. was opened in the name of Zolla and sold stock of Quality Wallbeds in the public market. The testimony of both Daniels and Zolla called for by the Subpoenas is intended to address all of the same relevant topics.

> 3.      *Daniels and Zolla Possess Information the Commission Lacks*

The testimony of both Daniels and Zolla is necessary to obtain information regarding the Issuers, including information uniquely in Daniels and Zolla's possession that does not reside in or derive from documents (or the testimony of others). Moreover, Daniels' previous responses to subpoenas (solely for documents) in this investigation (Exh. 1 ¶ 20) underscore the importance of the current Subpoenas. For example, Daniels responded that he had no documents or paper files in his possession for Court Document Services, Dinello, or Quality Wallbeds – despite holding managerial and/or control positions in these companies – and does not keep any emails longer than a few days. (*Id.*) Daniels' testimony becomes that much more important in the absence of any documents produced by him on those Issuers.

Meanwhile, the Commission has not previously issued a subpoena to Zolla with respect to the three Issuers identified in the Zolla Subpoena, for each of which he was a nominee shareholder. Documents in his possession would provide important information on the extent of his role in those Issuers. Moreover, the Zolla Subpoena requests documents and communications concerning a brokerage account in the name of Zolla that public traded the securities of Quality Wallbeds. While the Commission has access to documents in the possession of the broker-dealer (e.g. monthly account statements and account opening documents), Zolla may be in possession of related email or other communications that are not accessible absent the Zolla Subpoena.

> 4.      *The Commission Has Satisfied All Necessary Administrative Steps*

The Commission issued the Subpoenas to Daniels and Zolla in accord with all applicable

administrative requirements.  Section 19(b) of the Securities Act, 15 U.S.C. § 77s(b), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), empower the Commission to subpoena documents and testimony in the course of investigations.  Here, an attorney for the Division of Enforcement, designated as an officer of the Commission in the Formal Order, issued the Subpoenas to Daniels and Zolla. (Exh. 1 ¶¶ 7-8, 14-16, Attachments C-D, I-J).

Furthermore, under the Commission's Rules Relating to Investigations and Rules of Practice, an officer of the Commission may serve an investigative subpoena by several methods, including by personal service.[2]  The Commission's staff complied with those Rules in serving the Subpoena by personally serving Daniels at his primary residence via express mail, and Zolla via process server.  (*Id.*).

## CONCLUSION

The Commission has satisfied all the requirements for enforcement of the administrative subpoenas to Daniels and Zolla. Furthermore, the Commission has shown there is no legal support to the contrary as Daniels and Zolla have failed to fully and properly respond to the Subpoenas. Accordingly, the Commission requests this Court to expeditiously conduct a summary proceeding and issue an order:

(1)    Directing Daniels to appear for testimony at the Commission's Miami Regional Office within 14 days of the date of the order in compliance with the administrative subpoena previously served on him;

(2)    Directing Zolla to produce documents to the Commission's Miami Regional Office within 10 days of the date of the order in compliance with the

---

[2] Rule 8 of the Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, provides service of subpoenas in formal investigations shall be as prescribed in Rule 232(c) of the Commission's Rules of Practice, 17 C.F.R. § 201.232(c). Rule 232(c), in turn, provides the method of service shall be as set forth in Rule 150(b)-(d), 17 C.F.R. § 201.150(b)-(d), which allows service by either facsimile or express mail, either directly on a party or, if the party is represented by counsel, on counsel.

administrative subpoena previously served on him;

(3)     Directing Zolla to appear for testimony at the Commission's Miami Regional Office within 10 days following the production of the documents ordered above;

(4)     Granting the Commission such other relief as may be necessary and appropriate to insure Daniels and Zolla comply with the administrative Subpoenas and any order this Court issues; and

(5)     Retaining jurisdiction over this matter to insure Daniels and Zolla comply with the administrative Subpoenas and any orders of this Court.


                                        Respectfully submitted,

May 17, 2018                    By:      s/Wilfredo Fernandez
                                         Wilfredo Fernandez
                                         Senior Trial Counsel
                                         Court No. 142859
                                         Direct Dial:  (305) 982-6376
                                         E-mail: fernandezw@sec.gov
                                         *Lead Counsel*

                                         Attorneys for Applicant
                                         **SECURITIES AND EXCHANGE COMMISSION**

                                         801 Brickell Avenue, Suite 1800
                                         Miami, Florida  33131
                                         Telephone: (305) 982-6300
                                         Facsimile:  (305) 536-4154