UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 17-CV-21851-JEM/AOR

SECURITIES AND EXCHANGE COMMISSION )
)
APPLICANT, )
)
V )
)
MICHAEL J. DANIELS )
)
RESPONDENT. )
_____ )

FILED by _PG_ D.C.

JUN 20 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## MOTION FOR DECLATORY AND INJUNCTIVE RELIEF

Movant/Respondent Michael J. Daniels files this Motion in Proper Person against the U.S. Securities and Exchange Commission ("S.E.C." or "Commission") and alleges as follows:

### Preliminary Statement

1.  Mr. Daniels brings this action for declaratory and injunctive relief to prevent the S.E.C. from initiating an action against him in violation of the U.S. Constitution ("Constitution").

2.  On August 6, 2014 the Commission issued an Order Directing Private Investigation and Examination in the Matter of Orion Global Corp.

3.  Subsequent to this Order subpoenas were issued to the Movant/Respondent designed to lead to the Commission to an action to be brought before an administrative law judge. Under the Supreme Court's decision in *Free Enterprise Fund v. Pub Co Accounting Oversight Board*, 130 S. Ct. 3138, 561 U.S. 477 (2010) (*"Free Enterprise"*), administrative proceedings of the kind threatened here violate Article II of the Constitution.

1

4.     As set forth more fully below, S.E.C. administrative law judges ("S.E.C. ALJ's"), in connection with their enacted authority to oversee S.E.C. administrative proceedings are executive branch "officers" for purposes of Article II. Contrary to the Supreme Court's ruling in *Free Enterprise*, S.E.C. ALJ's enjoy at least two layers of tenure protection. Accordingly, S.E.C. administrative proceedings are unconstitutional because they violate Article II.

5.     Due to the illegitimate animus of attorneys Cook and Fernandez the Movant/Respondent expects the S.E.C. to file an administrative proceeding imminently against him.

6.     Declaratory and injunctive relief is necessary to prevent the Movant/Respondent from being compelled to submit to an unconstitutional proceeding.

## Juridiction, Venue and Parties

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, 2201 and 5 U.S.C. §§ 702 and 706. For purposes of this Motion the Movant/Respondent believes the venue is proper pursuant to 28 U.S.C. § 1391(b) and (e).

8.     It is necessary and appropriate for this Court to exercise jurisdiction over Mr. Daniels' claim because (1) without judicial review at this stage, meaningful judicial review of the claim asserted will be foreclosed; (b) Mr. Daniels' claim is wholly collateral to the review of provisions of the Securities laws; and (c) Mr. Daniels' claim is not within the particular expertise of the S.E.C.

9.     Mr. Daniels is a citizen of the State of Florida and a resident of Manatee County.

10.    The S.E.C. is an agency of the United States government headquartered in Washington, D.C.

## The S.E.C.'s Investigation

11. On August 6, 2014, under a formal Order of Investigation captioned *In The Matter of Orion Global Corp.* the Commission served the Movant/Respondent with the first of multiple subpoenas issued for the production of documents and/or testimony.

12. Movant/Respondent does not agree that the Southern District of Florida is the proper venue. The Commission asserts that the Commission may invoke the aid of any court of the United States within the jurisdiction of which such …is carried on".

13. The Movant/Respondent believes that the personal and illegitimate animus of Attorneys Cook and Fernandez requiring the Respondent to travel to Miami for a deposition is a clear cover for the selective enforcement of the subpoena. The United States Supreme Court has held that a claim of selective enforcement may be invoked to challenge individual claims of mistreatment at the hands of government officials. *Village of Willowbrook v. Olech 120 S. Ct. 1073 (2000) (Per Curiam).* See also *Sioux City Bridge Co. v Dakota County 260 US 441* and *Allegheny Pittsburgh Coal Co. v Commission of Webster Cty. 488 US 336 (1989).*

14. To the best of the knowledge of the Movant/Respondent the Commission has deposed all other individuals that are friends and family of the Movant/Respondent in Tampa, Florida or by telephonic means. This immediately raises the question of why the Movant/Respondent must travel to Miami instead of being offered a location in Tamp or telephonic means. But for the illegitimate animus of attorneys Cook and Fernandez the Movant/Respondent believes the place for the deposition would not be in Miami but Tampa, Florida.

15. In *Village of Willowbrook v. Olech 120 S. Ct. 1073 (2000) (Per Curiam)* the Seventh Circuit Court of Appeals held that "action was motivated solely by a "spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective".

16. Movant/Respondent believes that there is no rationale that can support requiring the Movant/Respondent to go to Miami for a deposition and that the motives of attorneys Cook and Fernandez are driven by their illegitimate animus toward the Movant/Respondent for exercising his Constitutional rights.

17. Movant/Respondent believes that the Commission, Cook and Fernandez will retaliate against him for exercising his rights to contest this matter in Proper Person.

## S.E.C. Administrative Proceedings

18. Prior to the passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No 111-203, 124 Stat. 1376 (2010) hereafter "Dodd-Frank, which became effective July 21, 2010, the S.E.C. would have been required by law to bring charges seeking the remedies set forth in their original motion.

19. The Movant/Respondent would have a Seventh Amendment right to a trial by a jury of his peers. Any trial in the action would be subject to the Federal Rules of Evidence, which preclude the use of unreliable evidence such as hearsay, and the Federal Rules of Procedure. In an administrative proceeding the S.E.C. ALJ serves as finder of fact and law.

20. The Movant/Respondent would have been protected by the numerous substantive and procedural mechanisms of the Federal Rules of Civil Procedure, including depositions and other discovery. The Movant/Respondent would have a reasonable amount of time to review the documents that the S.E.C. has collected over the course of it's almost three (3) year investigation. However, pursuant to Section 929P(a) of Dodd-Frank, the S.E.C. may now obtain the same in administrative proceedings overseen by the Commission itself. Providing an agency with the ability to obtain the same remedy in federal court or in an administrative proceeding is a

unique and unconstitutional enforcement regime previously unheard of in the large and ever growing administrative state.

21. This means that the S.E.C. has been given the unlimited discretion to bring enforcement actions against unregulated persons either in federal district court or in internal administrative proceedings. There are no statutes or regulations to guide these decisions.

22. By proceeding in the manner it has chosen the S.E.C. has chosen a forum that allows it to investigate, prosecute, adjudicate and if successful in supporting its allegations before an administrative law judge, provide appellate review of the case for which the very same commissioners approved the proceedings.

23. These administrative proceedings violate the U.S. Constitution, and the S.E.C.'s unlimited ability to choose the forum deprives the Movant/Respondent of his constitution rights to due process and equal protection under the law.

24. By proceeding administratively it is apparent that the S.E.C. has concluded that the Commission would have been disadvantaged by the Movant/Respondent's assertion of his Seventh Amendment right to a jury trial in district court. Under established Supreme Court precedent, this statutory regime, which penalizes the exercise of or anticipated exercise of a fundamental constitutional right, is a violation of the Movant/Respondent's right to due process under the Fifth Amendment of the United States Constitution.

25. Section 929P(a) of Dodd-Frank, which grants the S.E.C. authority to choose, arbitrarily and without any legitimate reason, to pursue civil remedies against unregulated citizens in either district court (where the Movant/Respondent would be entitled to a trial by jury) or the S.E.C. administratively (where the Movant/Respondent would not be entitled to a trial by jury) violates the United States Constitution's Fifth Amendment guarantee of equal protection of law.

26. Without declaratory and injunctive relief, the Movant/Respondent will suffer irreparable harm by being forced to endure an extensive, time-consuming unconstitutional proceeding that will prove a hardship on the company he is employed by as a certified backflow tester and irreparable damage to his reputation without equal protection of the law and the safeguards of due process.

27. The Rules of Practice prohibit respondents from asserting counterclaims against the S.E.C., whereas, in federal court, a defendant may assert counterclaims against a plaintiff.

28. The Rules of Practice provide for limited discovery. Unlike in federal court, depositions are generally not permitted. Rules of Practice 233, 234.

29. Administrative hearings occur on a more expedited schedule than civil actions in federal court. The Rules of Practice require the hearing to take place, at most, approximately four months from the issuance of the S.E.C.'s Order Instituting Proceedings ("OIP"). In its discretion, the S.E.C. can require the hearing to occur as early as one month after the OIP is issued. The S.E.C. is not required to begin making available to a respondent the limited discovery afforded in an administrative proceeding until seven days after the OIP is issued.

30. Unlike in federal court, the Federal Rules of Evidence do not apply in administrative proceedings. Instead, any evidence, including hearsay, that "can conceivably throw any light upon the controversy' should normally be admitted in [administrative] proceedings." In the Matter of Donald T Sheldon, et al., Release No. 275 (Mar. 19, 1987).

31. Any appeal from the S.E.C. ALJ's decision would be heard by the S.E.C. itself, the very body that earlier determined that an enforcement action was warranted, and the S.E.C. is empowered to decline to hear the appeal or to impose even greater sanctions. See Rules of

Procedure 410, 411. A final order of the Commission, after it is effective, may then be appealed to a United States Court of Appeals. See 15 U.S.C. § 78y(a)(l), 15 U.S.C. § 77i.

### The Broad and Substantial Powers of the ALJ

32. S.E.C. ALJs, who preside over administrative proceedings, exercise the type and degree of authority and discretion that render them officers for purposes of Article II of the U.S. Constitution.

33. S.E.C. ALJs are empowered with broad discretion to exercise significant authority regarding administrative proceedings. Under the S.E.C. Rules of Practice, an S.E.C. ALJ - referred to in the Rules of Practice as the "hearing officer" - is empowered, within his or her discretion, to perform the following functions, among other things:

   a. Regulate the course of a proceeding and the conduct of the parties and their counsel (Rules of Practice 111(d));

   b. Receive "relevant evidence" and rule upon "the admission of evidence and offers of proof" (Rules of Practice 111 (c));

   c. Issue subpoenas and order production of evidence (Rules of Practice 111 (b); 230(a)(2); 232);

   d. Issue orders, including orders to show-cause (Rules of Practice 141(b); see In the Matter of China Everhealth Corp., Genovabiotherapeutics, Inc., Glacier Enterprises, Inc., Green Asia Res., Inc., Jesup & Lamont, Inc., & Panoshan Mktg. Corp., Release No. 661 (Sept. 2, 2014));

   e. Rule on requests and motions, including pre-trial motions for summary disposition (See, e.g., Rules of Practice 250);

   f. Amend the S.E.C.'s OIP (Rules of Practice 200(d)(2));

7

    g.    Impose sanctions on parties for contemptuous conduct (Rules of Practice 180(a));

    h.    Enter orders of default, and rule on motions to set aside default (Rules of Practice 155);

    i.    Consolidate proceedings (Rules of Practice 201(a));

    j.    Require the S.E.C. to file a more definite statement of specified matters of fact or law to be considered or determined (Rules of Practice 220(d));

    k.    Order depositions, and act as the "deposition officer" (Rules of Practice 233, 234)

    l.    Regulate the production of documents in the proceeding (Rules of Practice 230(g));

    m.    Issue protective orders governing confidentiality of documents (Rules of Practice 322); and

    n.    Regulate the scope of cross-examination (Rules of Procedure 326).

34.    At the close of an administrative proceeding, the S.E.C. ALJ issues a decision, referred to in the Rules of Practice as the "initial decision." Rules of Practice 360. The initial decision states the time period within which a petition for Commission review of the initial decision may be filed.

35.    The initial decision becomes the final decision of the S.E.C. after the period to petition for review expires, unless the Commission determines to review the S.E.C. ALJ's decision.

36.    With certain exceptions that do not apply to this matter, the Commission is not required to review any S.E.C. ALJ's decision for review.

37.    As applied to this matter, Commission review is entirely discretionary. The Commission may deny a petition for review for any reason, after considering whether the petition for review makes a reasonable showing that (i) the decision embodies a clearly erroneous finding of

material fact, an erroneous conclusion of law, or an exercise of discretion or decision of law or policy that is "important"; or (ii) a prejudicial error was committed during the proceeding. Rules of Procedure 411.

38. If no party requests review, and if the Commission does not undertake review on its own initiative, no Commission review occurs. Instead, the Commission enters an Order that the decision has become final, and "the action of [the] administrative law judge ... shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission." 15 U.S.C. § 78d-1 (c). The order of finality states the date on which sanctions imposed by the S.E.C. ALJ, if any, will become effective. Rules of Practice 360(d)(2).

## The Position of S.E.C. ALJ

39. The S.E.C. is a "Department" of the Executive Branch of the U.S. Government. The individual Commissioners are the "heads" of the Department. Free Enterprise, 130 S. Ct. at 3163.

40. Pursuant to the authority granted to the S.E.C. by 5 U.S.C. § 3105, the Commissioners appoint S.E.C. ALJs. See 5 U.S.C. § 3105 ("Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with Sections 556 and 557 of this title.").

41. The Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., establishes ALJs' powers with respect to adjudication. 5 U.S.C. §§ 556, 557. The Securities laws empower the S.E.C. to delegate certain functions to S.E.C. ALJs, including those listed above at paragraphs 33a through 33n. See 15 U.S.C. §78d-1.

42. S.E.C. regulation establishes the "Office of Administrative Law Judges," and outlines their authority. See, e.g., 17 C.F.R. § 200.14; 17 C.F.R. § 200.30-9; 17 C.F.R. §

201.111. Those regulations provide that S.E.C. ALJs' authority with respect to adjudications is to be as broad as the APA allows. 17 C.F.R. § 201.111 ("No provision of these Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557.").

43. The salary of S.E.C. ALJs is specified by statute. There are eight levels of basic pay for ALJs, the lowest of which may not be less than 65% of the rate of basic pay for level IV of the Executive Schedule, and the highest of which may not be more than the rate of basic pay for level IV of the Executive Schedule. 5 U.S.C. § 5372. (The Executive Schedule is a system of salaries given to the highest-ranked appointed positions in the executive branch of the U.S. government. 5 U.S.C. § 5311.)

44. The manner of appointment of an ALJ is specified by statute. Appointments are made by agencies based on need. 5 U.S.C. § 3105. By regulation, ALJs may be appointed only from a list of eligible candidates provided by the Office of Personnel Management ("OPM") or with prior approval of OPM. 5 C.F.R. § 930.204. OPM selects eligible candidates based on a competitive exam, which OPM develops and administers. The S.E.C., like other agencies, selects ALJs from OPM's list of eligible candidates, based on the S.E.C.'s need. 5 U.S.C. § 3105; 5 C.F.R. § 930.204.

45. All ALJs receive career appointments and are exempt from probationary periods that apply to certain other government employees. 5 C.F.R. § 930.204(a). They do not serve time-limited terms.

46. Under the statutory and regulatory regime governing their duties and authority, their appointment, and salary, and their power, in certain instances, to issue the final decision of the agency, S.E.C. ALJs are "officers" of the United States. They exercise significant authority, are

empowered with broad discretion, are appointed as career adjudicators, and are appointed by the heads of an Executive Department.

### Removal of S.E.C. ALJs

47. S.E.C. ALJs are removable from their position by the S.E.C. "only" for "good cause," which must be "established and determined" by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a).

48. This removal procedure involves two or more "levels" of tenure protection, as referred to in Free Enterprise.

49. First, as noted, S.E.C. ALJs are protected by statute from removal absent "good cause." 5 U.S.C. § 7521(a).

50. Second, the S.E.C. Commissioners, who exercise the power of removal, are themselves protected by tenure. They may not be removed by the President from their position except for "inefficiency, neglect of duty, or malfeasance in office." See, e.g., Free Enterprise, 130 S. Ct. at 3148; MFS S.E.C.. Corp. v. S.E.C., 380 F.3d 611,619-20 (2d Cir. 2004).

51. Third, members of the MSPB, who determine whether sufficient "good cause" exists to remove an S.E.C. ALJ, are also protected by tenure. They are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

### The Removal Regime Applicable to S.E.C. ALJs Violates Article II's Conferral of Executive Power in the President of the United States

52. As executive officers, in accordance with the Supreme Court's analysis and holding in Free Enterprise, S.E.C. ALJs may not be protected by more than one layer of tenure protection.

53. Article II of the U.S. Constitution vests "[t]he executive Power ... in a President of the United States of America," who must "take Care that the Laws be faithfully executed." U.S.

11

Const. art. II, § 1, cl. 1; id., § 3. In light of "[t]he impossibility that one man should be able to perform all the great business of the State," the Constitution provides for executive officers to "assist the supreme Magistrate in discharging the duties of his trust." 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939); see also Free Enterprise, 561 U.S. 477, 130 S. Ct. at 3146.

54. Article II's vesting authority requires that the principal and inferior officers of the Executive Branch be answerable to the President and not be separated from the President by attenuated chains of accountability. In particular, as the Supreme Court held in Free Enterprise, Article II requires that executive officers, who exercise significant executive power, be unprotected from removal by their superiors at will, when those superiors are themselves protected from removal by the President at will.

55. S.E.C. ALJs, both generally and in this matter, exercise significant executive power.

56. The removal standards applicable to S.E.C. ALJs are unconstitutional because S.E.C. ALJs are inferior officers for purposes of Article II, Section 2 of the U.S. Constitution, and because:

   a. S.E.C. ALJs are protected from removal by a statutory "good cause" standard;

   b. The S.E.C. Commissioners who are empowered to seek removal of S.E.C. ALJs - within the constraints of the "good cause" standard - are themselves protected from removal by a standard of "inefficiency, neglect of duty, or malfeasance in office;" and

   c. The MSPB members who are empowered to effectuate the removal decision - again governed and limited by a "good cause" standard - are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard.

57. Under this attenuated removal scheme, "the President cannot remove an officer who enjoys more than one level of good-cause protection even if the President determines that the officer is neglecting his duties or discharging them improperly. That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This contravenes the President's constitutional obligation to ensure faithful execution of the laws." *Free Enterprise,* 130 S. Ct. at 3147, (quoting Morrison v Olson, 487 U.S. 654, 693 (1988)).

58. Because the President cannot oversee S.E.C. ALJ's in accordance with Article II, S.E.C. proceedings violate the Constitution.

### The S.E.C.'s Initiation of an Administrative Proceeding Will Cause Mr. Daniels Severe and Irreparable Harm

59. Absent injunctive relief from this Court the Movant/Respondent will be required to submit to an unconstitutional proceeding. This constitutional violation, standing alone, would constitute an irreparable injury. The absence of traditional procedural safeguards in S.E.C. administrative proceedings further exacerbates that irreparable harm.

60. If the S.E.C. were permitted to pursue an administrative proceeding while the instant Motion is pending, the Movant/Respondent would be denied any possibility of review until an appeal to a federal circuit court of appeals. The substantial litigation and resource burdens incurred during the administrative proceeding would eventually be for naught given the unconstitutionality of the administrative proceeding.

61. The S.E.C. likely would attempt to bring a new case in federal court compounding the costs, time and substantial harm to the reputation of the Movant/Respondent. This harm would cause damage well before the Movant/Respondent could obtain meaningful judicial review of his Article Ii claim. The availability of an appeal after an administrative proceeding to a federal

circuit court of appeals does not address this harm because the administratively-imposed sanction may have already taken effect and the damage therefore already substantial and harmfully done by the time the appellate court were to rule.

62. In contrast, the S.E.C. will suffer no harm. Any claim of harm by the S.E.C. would be fanciful given they may now proceed in federal court. Given that there has been no pecuniary harm to the investing public no member of the investing public would be harmed by the requested injunctive relief.

## COUNT ONE
## APPLICATION FOR INJUNCTIVE RELIEF

63. Movant/Respondent repeats and re-alleges paragraphs 1-62 as if set forth in full.

64. Movant/Respondent's constitutional rights will irreparably harmed if a permanent injunction (and, if necessary, a preliminary injunction and temporary restraining order) are not issued against the Commission and its administrative proceeding. The Movant/Respondent has a substantial likelihood of success on the merits of the claim. Movant/Respondent will be irreparably injured without injunctive relief and harm to the Movant/Respondent, absent any injunctive relief, far outweighs any harm to the S.E.C. (of which there can be none in this case) arising from the injunction. Issuance of the injunction will serve the public interest in protecting the rights of citizens under the Constitution and promoting respect for the law.

## COUNT TWO
## DECLARATORY JUDGMENT

65. Movant/Respondent repeats and re-alleges paragraphs 1-62 as if set forth in full.

66. Movant/Respondent respectfully requests that a declaratory judgement that the administrative proceeding against the Movant/Respondent is unconstitutional.

WHEREFORE, the Movant/Respondent prays for judgment and relief as follows:

  A. An order and judgement declaring unconstitutional the administrative proceedings that includes the statutory and regulatory provisions providing for the use of administrative law judges.

  B. An order enjoining the Commission from carrying out an administrative proceeding against the Movant/Respondent.

  C. Such other and further relief as the Court deems just and proper, including reasonable attorneys' fees and the costs of this action.

June 16, 2017            Respectfully submitted,

                  *Michael J. Daniels*
                  Michael J. Daniels, Proper Person
                  6719 Bobby Jones Ct
                  Palmetto, Florida 34221


